50 CCPA

**STANDARD PACKAGING CORPORA-TION, Appellant,**

v.

**AIR REDUCTION COMPANY, Incorporated, Appellee.**

**Patent Appeal No. 6992.**

United States Court of Customs and Patent Appeals.

June 6, 1963.

Mercer L. Stockell and W. Hubert Plummer (of Rogers, Hoge & Hills), New York City, E. F. Wenderoth, Washington, D. C., for appellant.

H. Hume Mathews, Thomas J. Cholis, Murray Hill, N. J., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal board (133 USPQ 351) dismissing appellant's opposition to the registration by appellee of the word-mark FLEXAC for "Polyvinyl Acetate Emulsions," application Ser. No. 69,934, filed March 20, 1959, claiming first use of the mark on September 15, 1958.

Opposer took testimony, testimony was stipulated on behalf of the applicant, a number of exhibits were introduced, and several third-party registrations were made of record to show that "Flex" is a common syllable used as, or in trademarks for, flexible products or the ingredients or makings thereof.

Opposer relies on seven registrations of FLEX–VAC or Flex–Vac–CA displayed in various ways for "Flexible moisture proof composition bags" and "Machines for vacuum packaging of bags." With respect to the last-men-

---

tioned designation of goods it would appear that it is not *bags* which are packaged but food or pharmaceutical products which are packaged *in* the flexible bags with the aid of opposer's vacuum packaging machinery which creates a vacuum in the bag and then seals it on the packaged product. As opposer's witness pointed out, FLEX–VAC is (from his layman's point of view and to his lawyer's dismay) "very descriptive of the process" which opposer sells, a *flexible vacuum* packaging process. This shows the obvious derivation and intended suggestive significance of the FLEX–VAC mark, which we do not regard as "descriptive." The letters "CA" in one of the registered marks stand for "Controlled Atmosphere," a phrase featured in another of the registered marks for obvious reasons.

Applicant's mark FLEXAC was derived in two parts also, the "FLEX" portion coming from flexible and the "AC" portion from the acetate in polyvinyl acetate.

The board wrote a complete and well-reasoned opinion giving attention to the arguments of the parties, which would appear to have been much the same below as they are before us. The following excerpt from its opinion recites in sufficient detail what we deem to be the controlling considerations:

"As shown by the record, opposer uses the mark 'FLEXVAC'[1] to identify flexible packaging materials in rolls and in fabricated pouches and for machines for vacuum packaging such materials; opposer's 'FLEXVAC' products are sold directly to packers of food and pharmaceutical products; and they are advertised in consumer publications and in trade publications directed primarily to food packers. On the other hand, applicant's 'FLEXAC' polyvinyl acetate emulsions are chemical compositions which are sold directly to manufacturers of adhesives, paints, textiles and coatings and are advertised in trade publications directed to the chemical, paper and pulp, and paint industries. It is apparent from the foregoing that although opposer and others in the packaging industry may employ polyvinyl acetate emulsions in their operations, the products in connection with which the marks 'FLEXAC' and 'FLEXVAC' are used are basically different non-competing products that are advertised in different trade publications and are sold in different channels of trade to entirely different classes of purchasers. Under the circumstances, there could be no opportunity for confusion in trade."

The board then considered opposer's arguments that manufacturers of packaging materials might use polyvinyl acetate emulsion and might ascribe common origin to said emulsion and its vacuum packaging equipment and supplies and that applicant's packaging field customers might represent to the public that their products were "FLEXAC" coated. The board rejected both of these arguments as unlikely. It then said:

"It is therefore concluded that the products of the parties are not of such nature that their sale under the marks 'FLEXAC' and 'FLEX-VAC' is likely to cause confusion, mistake or deception of purchasers."

With that conclusion we agree. The sole statutory basis of the opposition is, of course, the provision of section 2(d) of the Trademark Act of 1946 applied by the board. While viewed in the abstract the marks appear to have very

---

1. This form of presentation of opposer's mark is somewhat misleading and will not be used by us. It corresponds to none of the registered forms of the mark which are either the hyphenated form or a special design of lettering used in a quartered circle where the syllable "FLEX" is higher than the syllable "VAC," the X and the V having a common line so as to accent the two-syllable nature of the mark, as opposer obviously wishes to do to carry the suggestion of flexible vacuum packaging.

close similarity, we do not believe that they *so* resemble each other that *when applied to the goods of the respective parties* they would be likely to cause confusion, mistake or deception. We have considered opposer's arguments but they do not persuade us that the board failed to find the facts correctly or misapplied the law.

We are persuaded, in part, of the correctness of the board's decision by the cumulative differences in both the marks and the goods, the industrial nature of the channels of trade as distinguished from goods sold to the general consuming public, the highly suggestive nature and common use of the syllable "flex," and the fact that "VAC" is a very recognizable suggestion of vacuum in the circumstances of use of the opposer's marks, a suggestion which cannot be derived from "AC."

The decision of the board is affirmed.

Affirmed.